UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

PHILLIP W. FRICKE                                                                                           PLAINTIFF

v.                                                                                  CIVIL ACTION NO. 3:02-CV-536-S

E.I. DUPONT COMPANY                                                                                   DEFENDANT

## MEMORANDUM OPINION

The plaintiff, Phillip W. Fricke ("Fricke"), seeks compensatory and punitive damages for injuries he suffered as a result of alleged discriminatory practices conducted by the defendant, E.I. Dupont Company ("Dupont"). Specifically, Fricke alleges that Dupont violated the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA"), and the Kentucky Civil Rights Act. This matter is before the court on motion of the defendant for summary judgment (DN 35). For the reasons set forth below the court will grant defendant's motion by separate order.

## BACKGROUND

In 1978, Fricke began working for Dupont, a science and chemical company, at its Louisville, Kentucky plant. As an electrical engineer, Fricke held various positions with the company, most of which dealt with electrical power. In his last job with Dupont, Fricke served as Project Manager, Electrical Distribution Manager, and Power Area Engineer (collectively "Project Manager"). As Project Manager Fricke was supervised by Brent Sparks ("Sparks") until July 2001. At that time, Maureen Atchison ("Atchison") became his supervisor.

- 2 -

As early as December of 2000, Fricke began having problems with supervision. Dupont asserts that Fricke exhibited unusual and inappropriate behavior, such as interpersonal problems with co-workers. Fricke, however, disputes this information.

In the spring of 2001, Dupont placed Fricke on a targeted renewal plan ("renewal plan"). The renewal plan was aimed at helping Fricke improve his performance and specifically included goals for Fricke to improve "Interpersonal Sensitivity and Skill." Although Fricke argues that he met the requirements of the renewal plan, Atchison placed him on probation for unsatisfactory progress under the plan. Fricke met with Atchison, on January 4, 2002, to discuss the probationary period and renewal plan. Atchison claims that Fricke attempted to intimidate her at this meeting and that she had been frightened and shocked. Fricke disputes this description of the meeting, claiming that he only told Atchison that he had been harassed by her and Sparks, and that he felt he had been emotionally raped by them.

On January 25, 2002, Fricke attended an electrical safety meeting. Dupont alleges that Fricke again exhibited unusual and inappropriate behavior during this meeting. As a result of Fricke's inappropriate behavior, Barbara Jones, Human Resources Manager, and Brenda Kelsey, Human Resources Specialist, escorted Fricke to the medical division of the plant and referred him to an Employee Assistant Consultant to receive an appointment for an evaluation and counseling. Fricke was then placed on a leave of absence, and Dupont called a taxi to take him home. Fricke disputes that his behavior was inappropriate during the January 25 meeting, and claims that he was removed from the premises under false pretenses.

While absent from employment Fricke received short-term disability and visited medical professionals. Because Fricke's short-term disability would expire at the end of July, Dupont met with him on June 27, 2002, to advise him of his options. Dupont advised Fricke that he had not been released to return to work, and that one of his options was disability retirement with pension

benefits. Fricke argues that "[e]very health care professional said [he] was fit for duty" and able to return to work. However, Fricke does not cite the court to this in the record.

Fricke claims that after "all avenues for returning to work had been exhausted" he determined to take the disability retirement and began the application process. Fricke then signed a medical authorization to grant Dupont's medical department permission to assist him with his application. A determination was made by Aetna, Dupont's designated third-party administrator, that Fricke qualified for "Incap" benefits, meaning that he was incapable of performing work at Dupont. Fricke's retirement became effective July 31, 2002 and he began receiving pension benefits on August 2002.

Fricke claims that Dupont violated the ADEA, the ADA, and the Kentucky Civil Rights Act. Dupont argues that Fricke cannot establish the essential elements of these claims and has moved for summary judgment.

## DISCUSSION

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* at 2510. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First National Bank of*

*Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968). The evidence must be construed in a light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

**Age Discrimination Claim**

The complaint alleges that Dupont discriminated against Fricke in violation of the Kentucky Civil Rights Act, and in violation of the ADEA. Because the Kentucky Civil Rights Act is modeled after federal law, we will look to federal decisions construing the ADEA in order to analyze Fricke's claims. *Harker v. Federal Land Bank*, 679 S.W.2d 226 (Ky. 1984). "Under the ADEA, an employer is prohibited from discharging older employees on the basis of their age." *Wexler v. White's Fine Furniture*, 317 F.3d 564, 570 (6th Cir. 2003).

The Supreme Court in *McDonnell Douglas Corp. v. Green*, established the burden-shifting standards in an employment discrimination case. 411 U.S. 792 (1973). The Court held that the initial burden falls on the plaintiff to establish a prima facie case of discrimination. *Id*. at 802. To establish a prima facie case a plaintiff must either produce direct evidence of a discriminatory intent or show that: (1) the plaintiff was a member of the protected class, i.e. an individual over forty years old; (2) the employer took an employment action adverse to the plaintiff; (3) the plaintiff was qualified for the position; and (4) the plaintiff was replaced by a younger person. *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1023 (6th Cir. 1993). Dupont argues that Fricke is unable to establish a prima facie case of discrimination and that it is therefore entitled to summary judgment. We agree.

Here, Fricke cannot establish that Dupont took any adverse employment action. To establish a prima facie case of discrimination it is clear that an employee must demonstrate that he suffered a "materially adverse change in the terms of [his] employment." *Kocsis v. Multi-Care Mgmt.*, 97 F.3d 876, 885 (6th Cir. 1996). "In other words, there must be 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different

responsibilities, or a decision causing a significant change in benefits.'" *Miceli v. United States DOT*, 83 Fed. Appx. 697, 700 (6th Cir. 2003)(quoting, *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998).

Fricke argues that Dupont took a negative job action against him when it: (1) placed him on the renewal plan; (2) increased his duties while he was on the renewal plan; (3) removed him from the facilities on January 25, 2002; (4) failed to notify him of his rights under the Family Medical Leave Act; and (5) constructively discharged him by refusing to allow him to come back to work. We find that these actions "did not constitute an adverse employment action because [they] did not materially change the terms of [Fricke's] employment as viewed in light of the above standard." *Id*.

First, Fricke argues that the renewal plan was designed to harass him, and therefore, it should be considered an adverse employment action. The fact that Dupont placed him on the renewal plan, however, cannot be said to be a material adverse change in Fricke's employment. *Id*.; *Cf. Agnew v. BASF Corp.*, 286 F.3d 307 (6th Cir. 2002)(holding that performance improvement plans do not constitute intolerable conditions). For instance, being placed on the plan did not affect Fricke's benefits or wages. Second, Fricke argues that Dupont increased his duties while he was on the renewal plan. We do not find that the assignment of new tasks constituted an adverse employment action, especially because Fricke was a project manager. Another assertion made by the plaintiff is that Dupont never informed him of his Family Medical Leave Act leave. This clearly is not an adverse employment action as defined above.

Fricke also argues that his removal from the premises after the January 25, 2002 meeting was a negative job action, and that it was done under false pretenses. We do not find Fricke's removal at this time to be an adverse employment action. Again, it did not affect Fricke's benefits or wages. Also, Fricke has testified that at the time he was escorted from the premises he "was mentally, emotionally, and physically exhausted." Fricke Depo. Vol. II p. 210. Fricke does not dispute that he was unable to work at that time, and furthermore, on February 28, 2002, he was diagnosed by Dr.

Johnson as "not fit for a return to work at the present time." DN 41 Exh. K. Therefore, his removal from the building cannot be said to constitute an adverse employment action.

Finally Fricke argues that his decision to apply for disability retirement was made as a last resort when he was not allowed to return to work, and that this therefore constituted a constructive discharge. To demonstrate a constructive discharge, Fricke must show that "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Held v. Gulf Oil Co.*, 684 F.2d 427, 432 (6th Cir. 1982)(citation omitted). Here, Fricke argues that he was released by his doctors to return to work, but that Dupont refused to allow him to return leaving him only with the option to apply for disability retirement. However, Fricke has failed to cite to the record for this contention. In fact, Dr. Stein testified that she "had not yet made a decision about what [she] felt comfortable with [Fricke] walking back into," and that she "hadn't made a conclusion" regarding whether he could return to work or not. Dr. Stein Depo. P. 65. Therefore, we do not find Fricke's decision to apply for disability retirement to be the result of an adverse employment action. "While discharge without compensation is obviously undesirable, retirement on an adequate pension is generally regarded with favor." *Ackerman v. Diamond Shamrock Corp.*, 670 F.2d 66, 71 (6th Cir. 1982)(citation omitted).

Since Fricke is not able to establish that he was subjected to an adverse employment action his age discrimination claim must fail.

**Disability Discrimination Claim**

Fricke has also made a claim under the ADA. In order to make a prima facie case under the ADA a plaintiff must demonstrate that he or she has been subjected to an adverse employment action. *Burns v. Coca-Cola Enters.*, 222 F.3d 247 (6th Cir. 2000). For the same reasons set forth above, we find that Fricke is unable to demonstrate this element. Therefore, Fricke's ADA claim must fail.

## CONCLUSION

For the reasons set forth above, the court will grant summary judgment in favor of Dupont.

A separate order will be entered herein this date in accordance with this opinion.